UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

Rahmad Lashad Geddes,

        Defendant.

Criminal No. 14-394 (DWF/LIB)

MEMORANDUM
OPINION AND ORDER

Rahmad Lashad Geddes, *Pro se.*

Laura M. Provinzino and Jonathan D. Holets, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Rahmad Lashad Geddes's ("Geddes") *pro se* motion for compassionate release in light of the COVID-19 pandemic.[1]  (Doc. No. 169 ("Motion").)  The United States of America (the

---

[1] On December 28, 20202, Geddes also filed a motion to appoint counsel. (Doc. No. 176.) "[T]here is no general right to counsel in post-conviction habeas proceedings for criminal defendants." *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999); *Pollard v. Delo*, 28 F.3d 887, 888 (8th Cir. 1994). The Court respectfully denies Geddes's motion for appointment to counsel.

Geddes also filed two letters asking the Court to remove reference to his case from LexisNexis. (Doc. Nos. 177, 178.) The Court lacks authority to remove a public record from legal software.

"Government") opposes Geddes's Motion.² (Doc. No. 174.) For the reasons discussed below, the Court respectfully denies Geddes's Motion.³

## BACKGROUND

On April 27, 2015, a jury convicted Geddes of: (1) sex trafficking by force, fraud, or coercion (Count 1), (2) transportation with intent to engage in prostitution (Count 2); and (3) being a felon in possession of a firearm (Count 3). (Doc. No. 71.) On November 24, 2015, this Court sentenced him to 282 months' imprisonment on Counts 1 and 3 and 120 months' on Count 2 to run concurrently, to be followed by a lifetime term of supervised release for Count 1, and a three-year term for counts 2 and 3, also to run concurrently.⁴ (Doc. Nos. 105, 107.)

Geddes is currently incarcerated at Oxford FCI in Oxford, Wisconsin with an anticipated release date of August 19, 2034. Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited Jan. 13, 2021). Oxford FCI reports 1 active COVID-19 case among its inmates and 5 among its staff, zero inmate or staff deaths from COVID-19, and 728 inmates and 69 staff who have recovered from COVID-19. Federal

---

² Geddes's reply to the Government's opposition was due December 28, 2020; however, he did not respond. (*See* Doc. No. 172.)

³ The Court construes Geddes's Motion as a request under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release"). As discussed below, the Court finds that Geddes's Motion fails under either analysis.

⁴ Geddes filed a variety of appeals related to his conviction and sentence. (*See* Doc. Nos. 109, 124, 158.) The Eighth Circuit affirmed this Court or dismissed each of the appeals. (*See* Doc Nos. 129 130, 131, 162.)

Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 13, 2021). To date, the Bureau of Prisons ("BOP") has conducted 887 tests for COVID-19 at Oxford FCI with 739 tests positive for the virus and one test pending. *Id.*

Geddes now moves for compassionate release or release to home confinement on the grounds that he suffers from hypertension and obesity.[5] (Motion at 1; *see also* Doc. No. 175-2 ("Medical Records").) Geddes states that he has "legitimate concerns and fears about the spread and effects of the virus" and that "jail is not a place to get sick with the virus." (*Id.*) He further asserts that he "is not the same man he used to be" and wishes to return home to his family. (*Id.*)

## DISCUSSION

### I.     The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007. *See* 18 U.S.C. § 3624(c)(1).

---

[5]  Geddes' Medical Records indicate that on July 14, 2020, he was 74 inches tall and weighed 261 pounds. (Medical Records at 29.) Accordingly, his body mass index ("BMI") is approximately 33.5. The Centers for Disease Control and Prevention ("CDC") recognizes that individuals with a BMI greater than 30 are at increased risk of severe illness from COVID-19. Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited Jan. 13, 2021).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter. 18 U.S.C. § 3624(c)(2). Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." *Id.*; FSA § 602.

Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations. The BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that have experienced COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and similarly situated facilities to determine which inmates are suitable candidates for home confinement. Federal Bureau of Prisons, BOP Update on COVID-19 & Home Confinement, *www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp* (last visited Jan. 13, 2021). To date, the BOP has transferred more than 20,000 inmates

4

to home confinement. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 13, 2021).

As noted above, the BOP has exclusive authority to determine the placement of prisoners. *See* 18 U.S.C. § 3624(c)(2). Neither the CARES Act nor the FSA alters this authority. *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable. *See*, *e.g.*, 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025, at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3

(E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019).  Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568, at *5 (citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate.  *See* 18 U.S.C. § 3624(c). Accordingly, to the extent Geddes seeks release to home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.[6]

## II.    Compassionate Release

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).  Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration,

---

[6]    The Court observes that the BOP is currently considering Geddes's request for home confinement.  (Doc. No. 173 at 1.)

6

(3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.  U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement."  Statement.  The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable."  18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[7]  *Id.*

The record reflects that Geddes requested compassionate release from the warden at Oxford FCI sometime prior to its denial on September 24, 2020.  (Doc. No. 169-1

---

[7] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

("Denial").)  Geddes appealed the Denial, which was also denied.  (Doc. No. 173.)

Accordingly, the Court finds that his Motion is properly before it.

After a careful review of Geddes's Motion and other documentation, including his Medical Records and letter of support, the Court finds that his circumstances do not meet the demanding standard necessary for compassionate release.  The Court recognizes that because Geddes is obese, he is at heightened risk of severe illness should he contract COVID-19.[8]  Notwithstanding, the Court finds this reason alone insufficiently extraordinary or compelling to warrant compassionate release.  *See, e.g.*, *United States v. Garcia*, Cr. No. 10-275 (02) (MJD), 2020 WL 5500455, at *2 (D. Minn. Sept. 11, 2020) (finding obesity insufficiently extraordinary or compelling reason to warrant compassionate release); *United States v. Hennessey*, Cr. No. 18-304 (JRT/KMM), 2020 WL 4209020, at *1 (D. Minn. July 22, 2020) (same); *United States v. Edison*, Cr. No. 12-225 (DWF),  2020 WL 3871447, at *3 (D. Minn. July 9, 2020) (same); *United States v. Smith*, Cr. No. 16-169 (04) (MJD), 2020 WL 5424858, at *1 (D. Minn. Sept. 10, 2020) (finding that obesity and diabetes did not demonstrate extraordinary and compelling reasons); *United States v. Capehart*, Cr. No. 14-344-4 (JRT/TNL), 2020 WL 6119998, at *2 (D. Minn. Oct. 16, 2020) (finding that obesity and asthma did not demonstrate

---

[8]   The CDC also recognizes hypertension as a possible risk factor for severe COVID-19 infection.  Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited Jan. 13, 2021).  According to Geddes's Medical Records, though, his high blood pressure has been resolved and no medication is required.  (Medical Records at 27.)

extraordinary and compelling reasons); *United States v. Wright*, Cr. No. 17-0301 (WMW/DTS), 2020 WL 733412, at *4, (D. Minn. Dec. 14, 2020) (finding obesity insufficiently extraordinary or compelling reason to warrant compassionate release).

The Court also recognizes Geddes's generalized fear related to the COVID-19 pandemic and concern that he is at heightened risk for infection in a prison setting. Notwithstanding, the Court finds that this reason too, alone or in combination with his obesity, is insufficiently compelling or extraordinary to warrant compassionate release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

Even if the Court did find that Geddes presented extraordinary and compelling circumstances, the Court would not grant compassionate release because it cannot conclude that Geddes no longer poses "a danger to the safety of any other person or the community." Statement. Moreover, the Court finds that the § 3553(a) sentencing factors weigh strongly against release. 18 U.S.C. § 3553(a).

Geddes has served just a fraction of his 282-month sentence. While incarcerated, Geddes has had three infractions, including engaging in a fight with another inmate and insolence to staff. (Doc. No. 175-1.) Moreover, the Court cannot overlook Geddes's violent criminal history to now conclude that he no longer poses a risk to the community after serving so little of his sentence.[9] (*See* Doc. No. 93.) In short, the Court finds that

---

[9] The record reflects that one of Geddes's victims strongly opposes release. (Doc. No. 175-3.)

such a significant sentence reduction would not adequately address the seriousness of the charges of Geddes's conviction, promote respect for the law or provide a just punishment.

It is truly unfortunate that so many individuals at Oxford FCI have been infected with COVID-19.  It is promising, though, that there is just one active case of the virus at the facility.  Moreover, Oxford FCI continues to employ measures to mitigate its spread.[10]  Sadly, until there is a vaccine, some level of continued spread is inevitable.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.  Here the factors weigh strongly against release.

---

[10]     The Court notes that effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited Jan. 13, 2021).  Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates.  (*Id.*)  The BOP periodically updates its Plan and is currently in Phase Nine.  Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf*.  (last visited Jan. 13, 2021).

As discussed above, the BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Jan. 13, 2021).  As discussed above, since March, the BOP has transferred more than 20,000 inmates to home confinement.  *Id.*

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Geddes's Motion under the CARES Act because the decision of where to place a defendant is solely within the BOP's discretion to dictate. The Court also finds that Geddes is ineligible for compassionate release because he does not present an extraordinary and compelling reason, the Court cannot determine that he no longer poses a threat to society, and because the § 3553(a) factors weigh against release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Rahmad Lashad Geddes's styled motion for reduction of sentence and compassionate release (Doc. No. [169]) and motion to appoint counsel (Doc. No. [176]) are respectfully **DENIED**.

Date:  January 14, 2021                                  s/Donovan W. Frank
                                                                          DONOVAN W. FRANK
                                                                          United States District Judge